## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

ALANDRESS SHARPER,
individually and on behalf of all
others similarly situated,         Case No.: 2:22-cv-11691-BAF-APP

        Plaintiff,        Hon.: Bernard A. Friedman
                      Magistrate Judge Anthony P. Patti

v.

RANDALL-REILLY, LLC,

        Defendant.

_____/

### DEFENDANT RANDALL-REILLY, LLC'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO FED. R. CIV. P. 12(B)(1) AND LACK OF PERSONAL JURISDICTION PURSUANT TO FED. R. CIV. P. 12(B)(2), OR, IN THE ALTERNATIVE, MOTION TO COMPEL PLAINTIFF'S ARBITRATION ON AN INDIVIDUAL BASIS

Defendant Randall-Reilly, LLC ("Randall-Reilly") respectfully moves the Court to dismiss Plaintiff Alandress Sharper's ("Mr. Sharper") one-count Class Action Complaint (the "Complaint") (ECF No. 1), pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(1) and 12(b)(2).

Mr. Sharper's claims of injury against Randall-Reilly under the Michigan Preservation of Personal Privacy Act, M.C.L. § 445.1711, *et seq.*, allegedly arise from his subscription to Randall-Reilly's *Overdrive* magazine and Randall-Reilly's subsequent disclosure of his subscriber information. However, according to Randall-Reilly's searches of its databases, there is no evidence of any relationship between

Mr. Sharper and Randall-Reilly for the relevant time period, much less any evidence that he subscribed to or purchased a subscription to *Overdrive* magazine at any time. As a result, controlling law requires dismissal of Mr. Sharper's claim because he lacks Article III standing, thereby depriving this Court of subject-matter jurisdiction. Because Mr. Sharper lacks standing, governing authorities hold that substitution of a new putative plaintiff or the addition of a new plaintiff, in an attempt to retroactively create jurisdiction, would be improper.  Mr. Sharper lacks capacity to amend the complaint in a lawsuit that never was properly before the Court.

Moreover, Randall-Reilly is not subject to this Court's personal jurisdiction under either the doctrine of general or specific personal jurisdiction, serving as an additional reason warranting dismissal of the Complaint.

Finally, in the alternative, while Randall-Reilly has no record of Mr. Sharper in its databases prior to or on July 31, 2016 to the extent of its searches, an "Alandress Sharper," along with a "Butch Sharper" using the same email address and phone number as that Alandress Sharper, applied for jobs through a Randall-Reilly website on a total of three occasions across 2021 and 2022.  Notably, the Randall-Reilly website in question is subject to respective "Website Terms of Use," which apply to users of the website.  Among other items, the Website Terms of Use contain the following provisions: arbitration and class waiver, limitations on liability, indemnification, governing law and jurisdiction, and limitation on time to

file claims, and incorporate Randall-Reilly's Privacy Policy. To the extent Mr. Sharper places these website contacts at issue into his Complaint or this litigation, or if it is later determined that Mr. Sharper's claims against Randall-Reilly are subject to the Website Terms of Use, this Court should compel arbitration of his claims on an individual basis and apply the other terms of the Website Terms of Use.

Randall-Reilly respectfully requests that this Court: (i) dismiss the Complaint with prejudice under FRCP 12(b)(1) because Mr. Sharper lacks standing, thereby depriving this Court of subject-matter jurisdiction, (ii) dismiss the Complaint with prejudice under FRCP 12(b)(2) because the Court lacks personal jurisdiction over Randall-Reilly, (iii) dismiss the Complaint without leave to amend or substitute, and (iv) grant Randall-Reilly any other relief this Court deems proper.

As required by Local Rule 7.1(a)(2)(A), Randall-Reilly's counsel sought concurrence from Mr. Sharper's counsel in the relief sought during a phone conference on September 13, 2022, but concurrence was not obtained.

In support of this Motion, Randall-Reilly relies on the attached Brief in Support, the Declaration of Keith Manthey (Exhibit A), and the Declaration of J. Ethan McDaniel (Exhibit B).

Respectfully submitted,

Dated: September 19, 2022

*/s/ Jonathan E. Lauderbach*
Jonathan E. Lauderbach (P51313)
Katelyn D. Crysler (P83718)
WARNER NORCROSS + JUDD LLP

3

2715 Woodward Ave., Suite 300
Detroit, Michigan 48201
(313) 546-6000
jlauderbach@wnj.com
kcrysler@wnj.com
*Attorneys for Defendant Randall-Reilly, LLC*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

ALANDRESS SHARPER,
individually and on behalf of all
others similarly situated,                    Case No.:  2:22-cv-11691-BAF-APP

       Plaintiff,                          Hon.:  Bernard A. Friedman
                                              Magistrate Judge Anthony P. Patti

v.

RANDALL-REILLY, LLC,

       Defendant.
_____/

## BRIEF IN SUPPORT OF DEFENDANT RANDALL-REILLY, LLC'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO FED. R. CIV. P. 12(B)(1) AND LACK OF PERSONAL JURISDICTION PURSUANT TO FED. R. CIV. P. 12(B)(2), OR, IN THE ALTERNATIVE, MOTION TO COMPEL PLAINTIFF'S ARBITRATION ON AN INDIVIDUAL BASIS

# **TABLE OF CONTENTS**

STATEMENT OF THE ISSUES PRESENTED ........................................................ ii

TABLE OF AUTHORITIES ................................................................................. iii

I. Introduction................................................................................................... 1

II. Argument .................................................................................................... 7

    A. This Court lacks subject-matter jurisdiction because Mr. Sharper never had any relationship with Randall-Reilly during the relevant period, which deprives him of Article III Standing. ......................................................................................... 7

    B. Randall-Reilly is not subject to general or specific personal jurisdiction in this forum................................................................................................................... 12

       1. Randall-Reilly is not subject to general personal jurisdiction ...................... 13

       2. Randall-Reilly is not subject to specific personal jurisdiction. ................... 15

    C. Mr. Sharper's lack of standing prevents substitution or addition of a new class representative.................................................................................................... 17

    D. Alternatively, this Court Should Compel Individual Arbitration of Mr. Sharper's Claims if His Later Contacts Become at Issue.................................... 19

       1. Applicable Terms and Conditions ............................................................ 20

       2. Legal Analysis................................................................................... 21

          a. The parties have a valid arbitration agreement......................................... 22

          b. Mr. Sharper's claims fall within the arbitration clause. ............................ 23

III. Conclusion................................................................................................. 25

## <u>STATEMENT OF THE ISSUES PRESENTED</u>

I.  Does this Court have subject-matter jurisdiction over Mr. Sharper's claims against Randall-Reilly, whereby Mr. Sharper alleges that Randall-Reilly improperly disclosed his personal subscription information, when Mr. Sharper never subscribed to the Randall-Reilly magazine at issue and when there is no record of any relationship with Mr. Sharper during the relevant time period?

Defendant's answer: No.

II.  Does this Court have personal jurisdiction over Randall-Reilly when Randall-Reilly is not subject to general personal jurisdiction in this forum and Randall-Reilly has not engaged in suit-related conduct in this forum?

Defendant's answer: No.

III.  When Mr. Sharper does not have Article III Standing, may he substitute or add another named plaintiff in an effort to create subject-matter jurisdiction retroactively?

Defendant's answer: No.

III.  Alternatively, if Mr. Sharper places his known contacts with Randall-Reilly at issue, should the Court compel arbitration of his claims on an individual basis and otherwise enforce the Website Terms of Use?

Defendant's answer: Yes.

## <u>TABLE OF AUTHORITIES</u>

### <u>RULES</u>

Fed. R. Civ. P. 12(b)(1)........................................................................ 1, 3, 9

Fed. R. Civ. P. 12(b)(2)..........................................................................1, 3

### <u>STATUTES</u>

Michigan Preservation of Personal Privacy Act, M.C.L. § 445.1711, *et seq.*...........1

The Federal Arbitration Act, 9 U.S.C. §§ 1–16......................................... 21, 22, 24

### <u>CASES</u>

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011).....................................24

*BNSF Railway Co. v. Tyrell*, 137 S. Ct. 1549 (2017)..............................................15

*Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773 (2017)

........................................................................................................ 13, 14

*Daimler AG v. Bauman*, 571 U.S. 117 (2014)................................................. 13, 14

*Glazer v. Lehman Bros., Inc.*, 394 F.3d 444 (6th Cir. 2005)...................................23

*Glenn v. Holder,* 690 F.3d 417 (6th Cir. 2012) ........................................................8

*Hollingsworth v. Perry*, 570 U.S. 693 (2013)..........................................................12

*Impulsaria, LLC v. United Distribution Grp., LLC*, 2012 WL 4341058, at *1 (W.D.

Mich. Sept. 20, 2012) ................................................................. 15, 17

*In re Packaged Ice Antitrust Litigation*, 2011 WL 6178891, at *6 (E.D. Mich. Dec.

12, 2011)......................................................................................................17

*In re StockX Customer Data Sec. Breach Litig.,* 19 F.4th 873 (6th Cir. 2021).......24

*Intera Corp. v. Henderson*, 428 F.3d 605 (6th Cir. 2005)................................ 14, 15

*Kline v. Fishman Group PC*, 2022 WL 597434, at *1 (E.D. Mich. Feb. 28, 2022)12

*Kloian v. Domino's Pizza LLC*, 733 N.W.2d 766 (Mich. App. 2006)......................23

*Lin v. Crain Communications, Inc.*, 2020 WL 2043527, at *1 (E.D. Mich. April 27, 2020) ........................................................................................................18

*Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598 (6th Cir. 2007) ...........10

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .................................................8

*Magna Powertrain De Mexico S.A. De C.V. v. Momentive Performance Materials USA LLC*, 192 F. Supp. 3d 824 (E.D. Mich. 2016)....................................... 13, 17

*Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883 (6th Cir. 2002)...............15

*Pistorio v. FCA US LLC*, 2022 WL 141524, at *1 (E.D. Mich. January 14, 2022) 12

*Shirley v. Rocket Mortgage*, 2022 WL 2541123, at *1 (E.D. Mich. July 7, 2022) 21, 24

*Simpson-Vlach v. Michigan Dept. of Educ.*, __ F. Supp. 3d __, 2022 WL 2910184, at *1 (E.D. Mich. July 22, 2022) .........................................................................11

*Southern Mach. Co. v. Mohasco Indus.*, 401 F.2d 374 (6th Cir.1968)....................16

*SSpokeo, Inc. v. Robbins*, 578 U.S. 330 (2016) .............................................. 8, 9, 10

*Tennessee Gen. Assembly v. United States Dep't of State*, 931 F.3d 499 (6th Cir. 2019) .........................................................................................................................8

*Thompson v. Love's Travel Stops & Country Stores, Inc.*, 748 Fed. App'x 6 (6th Cir. 2018).............................................................................................................11

*Williams v. Redflex Traffic Sys., Inc.*, 582 F.3d 617, 620 (6th Cir. 2009)...........8, 10

## I.   Introduction

This is a putative class action brought by Plaintiff Alandress Sharper ("Mr. Sharper") against Randall-Reilly, LLC ("Randall-Reilly") under the Michigan Preservation of Personal Privacy Act, M.C.L. § 445.1711, *et seq.* (the "PPPA"). (ECF No. 1, PgIDs 1-4, Compl. ¶¶ 1–4.) Mr. Sharper alleges he purchased a subscription to *Overdrive* magazine ("*Overdrive*") "directly from" Randall-Reilly at some unspecified time before July 31, 2016, and that Randall-Reilly disclosed his *Overdrive*-subscriber information to other entities without his permission in violation of the PPPA. (*Id.*, PgIDs. 1-5, 21-23, Compl. ¶¶ 1–4, 9, 58, 65, 67.) Based on this allegation, Mr. Sharper asserts claims for statutory damages and attorneys' fees for himself and on behalf of "all Michigan residents who, at any point during the relevant pre-July 31, 2016 time period, had their Private Reading Information disclosed to third parties by Randall-Reilly without consent[.]" (*Id.*, PgIDs.1-5, 19, 24, Compl. ¶¶ 1–4, 49, 73.)

Randall-Reilly is a Delaware limited liability company that publishes several subscription-based periodicals, including *Overdrive*. (*Id.*, PgID.6, Compl. ¶ 10; Ex. A, Manthey Decl. at ¶¶ 4, 13.) Randall-Reilly's publications and websites are available across the country, and the company does not specifically target the State of Michigan for subscriptions to *Overdrive*. (Ex. A at ¶ 15.) Indeed, as of August 1, 2016, less than 2.5 percent of Randall-Reilly's *Overdrive* subscribers were Michigan

1

residents. (*Id.* at ¶ 17.) Only ten of Randall-Reilly's approximately 600 employees reside in Michigan—all of whom work remotely. (*Id.* at ¶ 16.) Randall-Reilly has no brick-and-mortar presence in Michigan, let alone any bank accounts there. (*Id.* at ¶¶ 16, 18.) Randall-Reilly's principal place of business is Tuscaloosa, Alabama, and none of Randall-Reilly's members are Michigan citizens. (*Id.* at ¶¶ 13–14.)

On July 28, 2022, Randall-Reilly, under the supervision of Chief Technical Officer Keith Manthey, began an investigation into its connections, if any, with Mr. Sharper. (*Id.* at ¶¶ 1, 4.) In sum, Randall-Reilly found no record of an "Alandress Sharper," or derivation thereof, in any Randall-Reilly database from the January 1, 2013 effective date of its searches through July 31, 2016. (*Id.* at ¶ 11.)

To investigate Mr. Sharper's claims, Randall-Reilly searched its databases for any evidence that Mr. Sharper is or has been associated with Randall-Reilly in any way. (*Id.* ¶ 4.) First, Randall-Reilly searched its databases for any record of Mr. Sharper's affiliation with *Overdrive*, including his alleged purchase of a subscription to *Overdrive* or alleged status as an *Overdrive* subscriber before July 31, 2016. (*Id.*) Second, Randall-Reilly searched its databases for any record of Mr. Sharper as a subscription purchaser, subscriber, or customer with regard to *any* Randall-Reilly publication or product. (*Id.*) Third, on September 15, 2022, Mr. Manthey personally performed additional confirmatory searches of Randall-Reilly's databases, which included possible misspellings of "Alandress Sharper" and searches by email

address and phone number. (*Id*. at ¶¶ 4, 8.) Randall-Reilly's searches extended from January 1, 2013 to September 15, 2022 (the "Search Period"). (*Id.* at ¶ 4.)

Through these searches, Randall-Reilly found no record of Mr. Sharper as a subscriber to *Overdrive* or as a purchaser of a subscription to *Overdrive* within the Search Period on or before July 31, 2016 or any time thereafter. (*Id.* ¶ at 5.) Moreover, Randall-Reilly has found no record in its custody or control indicating that Mr. Sharper ever subscribed to any Randall-Reilly publication, or that he ever purchased a subscription to any Randall-Reilly publication, in the Search Period on or before July 31, 2016 or at any time thereafter. (*Id.*)

Randall-Reilly's searches did reveal an entry for "Alandress Sharper" (the "August Entry") in Randall-Reilly's database, indicating that on August 24, 2022, an individual providing the name "Alandress Sharper" applied for a job through a Randall-Reilly website: https://www.careersingear.com/ (the "CIG Website"). (*Id.* at ¶ 7.) On that date, the CIG Website was and remains subject to the Website Terms ("August 2022 Website Terms"), which are attached to Keith Manthey's Declaration (Exhibit A) as Attachment A. (*Id.*) Among other items, the August Website Terms contain arbitration and class waiver provisions. (*Id.*)

Following the discovery of the August Entry, Mr. Manthey searched by the August Entry's associated phone number and email address and found two additional database entries. (*Id.* at ¶ 8.) Through that search, Mr. Manthey discovered

3

an entry for a "Butch Sharper" who applied for a job through the CIG Website on March 20, 2022 (the "March Entry").  (*Id.* at ¶ 9.) The email address and phone number provided for "Butch Sharper" matched the email address and phone number in the August Entry. (*Id.*) At the time of the March Entry, the CIG Website was subject to the Website Terms ("March 2022 Website Terms"), which are attached to Keith Manthey's Declaration (Exhibit A) as Attachment B. (*Id.*) Among other items, the March Website Terms contain arbitration and class waiver provisions. (*Id.*)

Second, through the phone number and email address search, Mr. Manthey discovered another entry for a "Butch Sharper" who applied for a job through the CIG Website on June 30, 2021 (the "June Entry"). (*Id.* at ¶ 10.) The  email address and phone number provided again matched the email address and phone number in the August Entry. (*Id.*) At the time of the June Entry, the CIG Website was subject to the Website Terms ("June 2021 Website Terms"), which are attached to Keith Manthey's Declaration (Exhibit A) as Attachment C.  (*Id.*) Among other items, the June Website Terms contain arbitration and class waiver provisions. (*Id.*)

In sum, there is no record of an Alandress Sharper, or derivation thereof, in any Randall-Reilly database during the Search Period on or before July 31, 2016. (*Compare id.* at ¶¶ 3-11, *with* ECF No. 1, PgIDs.1, 5, 19, 21-24, Compl. ¶¶ 1, 9, 49, 58–73.) Moreover, there is no record in Randall-Reilly's possession, custody, or control showing that Randall-Reilly ever transmitted any information to a third party

identifying anyone named Alandress Sharper, during the Search Period prior to or on July 31, 2016. (Ex. A at ¶ 12.)

Within a week of Mr. Sharper's service of the Complaint on Randall-Reilly, outside counsel for Randall-Reilly, J. Ethan McDaniel, contacted counsel for Mr. Sharper by phone. (Ex. B at ¶¶ 1, 3.) During the discussion, Mr. McDaniel informed Plaintiff's counsel that Randall-Reilly had been unable to locate any record of Mr. Sharper as a subscriber to *Overdrive* magazine. (*Id.* at ¶ 3.) Mr. McDaniel explained Randall-Reilly's position that Mr. Sharper lacks standing in light of the absence of such records. (*Id.*) Plaintiff's counsel informed Mr. McDaniel that he would contact Mr. Sharper to discuss the issue and provide further information as to Plaintiff's alleged subscription to *Overdrive* magazine.  (*See id.*, Attach. A at pg. 4.)

On August 10, 2022, Mr. McDaniel followed up with Plaintiff's Counsel to ask whether Mr. Sharper had provided any information about his alleged *Overdrive* subscription. (*Id.* at pg. 1.)  Mr. McDaniel further informed Plaintiff's counsel that Randall-Reilly had been "unable to locate any record of Mr. Sharper.  And our search was not limited to *Overdrive* subscribers." (*Id.*)

Plaintiff's Counsel did not respond to Mr. McDaniel's August 10, 2022 email. (Ex. A at ¶ 5.) As such, Mr. McDaniel followed up with Plaintiff's Counsel on August 22, 2022, stating: "I'm checking to see if [you] have any additional information regarding Mr. Sharper's alleged subscription to *Overdrive* magazine

that you can share.  I think we've exhausted our efforts on our end." (*Id*., Attach. A at pg. 1.) Plaintiff's Counsel did not respond to this email. (Ex. B at ¶ 5.)

In anticipation of filing this Motion, Counsel for Randall-Reilly called Plaintiff's Counsel on September 13, 2022 to meet and confer, pursuant to LR 7.1(a)(2)(A). (*Id.* at ¶ 6.) Counsel for Randall Reilly informed Plaintiff's Counsel of Randall-Reilly's intention to contest subject-matter and personal jurisdiction due to the lack of evidence of a relationship between Mr. Sharper and Randall-Reilly during the Complaint's relevant time period. (*Id.* at ¶ 6; ECF No. 1, PgID.19, Compl. ¶ 49.) Plaintiff's Counsel claimed that Mr. Sharper had some undescribed evidence of such a relationship, but that Plaintiff's Counsel did not have it presently available. (Ex. B at ¶ 6.) Counsel for Randall-Reilly again requested the documentation and, moments later, sent an email memorializing that request. (*Id.*, Attach. B at pg. 1.) But Randall-Reilly received no response. (Ex. B at ¶ 6.) During the meet and confer, Plaintiff's Counsel also informed Counsel for Randall-Reilly that he planned to amend the Complaint as a matter of right to add a new Plaintiff, which he argued would moot this Motion to Dismiss. (*Id.* at ¶ 7.) Counsel for Randall-Reilly informed Plaintiff's Counsel that the brief in support of Randall-Reilly's impending Motion counters that argument and the authorities cited therein do not allow for the addition of a plaintiff or substitution of a plaintiff in an attempt to create standing retroactively.  (*Id.* at ¶ 7.) Yet, Plaintiff's counsel did not concur in the relief sought herein.

## II.     Argument

In light of the above facts, established through the attached declarations, Mr. Sharper lacks standing under Article III of the U.S. Constitution—a prerequisite for this Court's subject-matter jurisdiction. This case can and should be resolved on this threshold issue. Further, this Court lacks general personal jurisdiction over Randall-Reilly because it is not at home in Michigan. And, since Mr. Sharper has no connection to Randall-Reilly in the Complaint's relevant time period, Randall-Reilly has not engaged in any suit-related conduct that subjects it to this Court's specific personal jurisdiction. Moreover, because Mr. Sharper lacks standing, he cannot substitute or add a new plaintiff to retroactively cure his jurisdictional deficiencies.

Alternatively, in the event Mr. Sharper's later contacts are placed at issue, or if he provides evidence of a relationship with Randall-Reilly during the relevant period, the Court should compel arbitration as to the later contacts, or enforce any website terms governing contacts during the relevant period.

### A.     This Court lacks subject-matter jurisdiction because Mr. Sharper never had any relationship with Randall-Reilly during the relevant period, which deprives him of Article III Standing.

Subject-matter jurisdiction is a threshold requirement for any federal lawsuit. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Accordingly, federal courts consider attacks on subject-matter jurisdiction before entertaining any other challenges to a lawsuit. *Tennessee v. U.S. Dep't of State*, 329 F. Supp. 3d 597, 609–10 (W.D. Tenn.

2018), *aff'd, sub nom State by & through Tennessee Gen. Assembly v. United States Dep't of State*, 931 F.3d 499 (6th Cir. 2019); *Lemke v. H&R Block Mortg. Corp.*, 2012 WL 715894 at *1 (E.D. Mich. Mar. 6, 2012) (citing *Bell v. Hood*, 327 U.S. 678 (1946)). The Court must determine whether Mr. Sharper satisfies the U.S. Constitution's case-or-controversy requirement, of which standing is a "core component." *See Glenn v. Holder,* 690 F.3d 417, 421 (6th Cir. 2012) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

As "the party invoking federal jurisdiction," Mr. Sharper "bears the burden of establishing" the elements of standing. *Williams v. Redflex Traffic Sys., Inc.*, 582 F.3d 617, 620 (6th Cir. 2009) (quoting *Lujan*, 504 U.S. at 561). Mr. Sharper must establish each required element "in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Id.* (quoting *Lujan*, 504 U.S. at 561). To establish Article III standing, Mr. Sharper must prove that he: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of" Randall-Reilly, and "(3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 338 (2016). *See also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Crucially, this framework requires "a causal connection between" Shaper's alleged injuries "and the "complained of" conduct of Randall-Reilly. *Lujan*, 504 U.S. at 560.

8

Where, as here, a defendant challenges the factual basis for the plaintiff's standing, the plaintiff cannot satisfy his burden with mere generalized allegations. Given that Randall-Reilly's "Rule 12(b)(1) motion attacks the factual basis for jurisdiction," this Court "must weigh the evidence" and Mr. Sharper "has the burden of proving" subject matter jurisdiction. *Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007) (internal citation and quotation marks omitted)). Further, this Court "has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists," and it may consider "evidence outside of the pleadings," such as Randall-Reilly's two attached declarations. *Cartwright v. Garner*, 751 F.3d 752, 759–60 (6th Cir. 2014). The Court "has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case." *Id*.

Mr. Sharper's class-action allegations do not lower his jurisdictional standing hurdles. "That a suit may be a class action . . . adds nothing to the question of standing," because "even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Spokeo*, 578 U.S. at 338 n.6 (citation and internal quotation marks omitted); *accord TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021); *Lewis v. Casey*, 518 U.S. 343, 357 (1996). In other words, Mr. Sharper cannot succeed by showing that someone, somewhere

9

out there in his putative class has standing. He must *individually* have standing for

his suit to proceed.  *Spokeo*, 578 U.S. at 338 n.6.

Here, the evidence establishes that Mr. Sharper does not have an "injury in

fact" that is "fairly traceable" to Randall-Reilly. *Id.* at 338. Every injury Mr. Sharper

alleges in the Complaint stems from his supposed *Overdrive* subscription. (ECF No.

1, PgIDs.1-4, 21-24, Compl. ¶¶ 1–4, 58–73.) The uncontroverted evidence shows

that, contrary to the allegations in the Complaint, Mr. Sharper has never subscribed

to *Overdrive* or purchased an *Overdrive* subscription. (Ex. A at ¶¶ 5–6; Ex. B, at ¶¶

3–6.) Moreover, Randall-Reilly has no record of a relationship with a person named

"Alandress Sharper" with respect to *any* of its publications. (Ex. A at ¶¶ 5–6.) To

date, Mr. Sharper has failed to come forward with evidence in response to Randall-

Reilly's inquiries about the alleged subscription to *Overdrive* despite Randall-

Reilly's requests for any such evidence on four separate occasions. (Ex. B, Attachs.

A and B.) Absent any evidence that Mr. Sharper actually engaged Randall-Reilly for

the services that caused the alleged wrongful disclosure—which it is his burden to

produce—he cannot satisfy the immutable elements of standing. *See Williams*, 582

F.3d at 620. For this reason alone, the Court should dismiss Mr. Sharper's claims.

*Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 607 (6th Cir. 2007) ("If

Plaintiffs cannot establish constitutional standing, their claims must be dismissed for

lack of subject matter jurisdiction.").

Mr. Sharper's contacts with Randall-Reilly revealed in the March Entry, June Entry, and August Entry are irrelevant to the jurisdictional inquiry for at least two reasons. First, the Complaint anchors its cause of action to disclosures made "at any point during the relevant pre-July 31, 2016 time period." (*See, e.g.*, ECF No. 1, PgIDs.3, 5, 19, Compl. ¶¶ 3, 9, 49.) Randall Reilly could not have made disclosures before July 31, 2016 based on contacts that did not occur until 2021 and 2022. Indeed, the evidence before the Court shows that Randall-Reilly never transmitted any information to a third party identifying anyone named "Alandress Sharper" during its Search Period on or before July 31, 2016. (Ex. A at ¶ 12.) Second, Mr. Sharper's claims arise from alleged disclosures based on a subscription to *Overdrive.* (ECF No. 1, PgIDs.1-4, 19, 24, Compl. ¶¶ 1–4, 49, 73.) The March, June, and August Entries have nothing to do with a subscription to *Overdrive* or any other Randall-Reilly publication, (Ex. A at ¶¶ 7–11), and are not referenced in the Complaint.

Federal Courts in this circuit routinely dismiss putative class claims brought by plaintiffs who lack evidence of any cognizable injury-in-fact or legal interest in the subject-matter of the litigation. *See, e.g.*, *Thompson v. Love's Travel Stops & Country Stores, Inc.*, 748 Fed. App'x 6, 8–11 (6th Cir. 2018) (dismissing class claims when named plaintiffs lacked standing); *Simpson-Vlach v. Michigan Dept. of Educ.*, __ F. Supp. 3d __, __, No. 21-cv-11532, 2022 WL 2910184, at *1 (E.D. Mich. July 22, 2022) (dismissing plaintiffs' putative class claims when plaintiffs lacked

standing); *Kline v. Fishman Group PC*, No. 21-11272, 2022 WL 597434, at *3–4 (E.D. Mich. February 28, 2022) (dismissing plaintiffs' putative FDCPA and state law class claims, without leave to amend, because plaintiffs lacked standing); *Pistorio v. FCA US LLC*, 20-cv-11838, 2022 WL 141524, at *6 (E.D. Mich. January 14, 2022) (dismissing putative class claims of plaintiffs lacking standing).

This Court should follow the lead of the above Courts and dismiss this matter for lack of standing because Mr. Sharper does not seek "relief for an injury that affects him in a personal and individual way" and he does not possess a "direct stake in the outcome" in the case. *Hollingsworth v. Perry*, 570 U.S. 693, 705–06 (2013) (internal quotations omitted). His case is precisely the kind that Article III precludes.

## B. Randall-Reilly is not subject to general or specific personal jurisdiction in this forum.

As the party seeking to assert personal jurisdiction over Randall-Reilly, Mr. Sharper "bears the burden of demonstrating that such jurisdiction exists." *Schneider v. Hardesty*, 669 F.3d 693, 697 (6th Cir. 2012) (internal quotations and citations omitted). Here, Randall-Reilly contests the Complaint's personal-jurisdiction allegations with contrary evidence. (*See gen.* Ex. A; Ex. B). Accordingly, Mr. Sharper "may not stand on his pleadings, but must show the specific facts demonstrating that the court has jurisdiction." *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 678 (6th Cir. 2012). In other words, Sharper "cannot rely on mere allegations in the complaint, unless they are uncontroverted by the defendant-

movant—in which case they can be accepted as true, as can the averments in the plaintiff's declarations (even if contradicted) and the defendant's undisputed factual assertions." *Shelter Mut. Ins. Co. v. Bissell Homecare, Inc.*, No. 3:20-CV-00813, 2021 WL 1663585, at *3 (M.D. Tenn. Apr. 28, 2021).

The Supreme Court has identified two distinct types of personal jurisdiction: "general" personal jurisdiction (or "all-purpose" jurisdiction) and "specific" personal jurisdiction (or "case-linked" jurisdiction). *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773, 1779–80 (2017) ("*Bristol-Myers Squibb*"). Neither is present here.

### 1. Randall-Reilly is not subject to general personal jurisdiction.

General personal jurisdiction subjects a defendant to suit for "any and all claims against it, wherever in the world the claims may arise." *Daimler AG v. Bauman*, 571 U.S. 117, 121 (2014). Courts in this District have treated limited liability companies, like Randall-Reilly, in the same manner as corporations for general personal jurisdiction purposes. *See, e.g.*, *Magna Powertrain De Mexico S.A. De C.V. v. Momentive Performance Materials USA LLC*, 192 F. Supp. 3d 824, 828 (E.D. Mich. 2016). Therefore, Randall-Reilly is subject to general personal jurisdiction in Michigan only if its contacts "are so 'continuous and systematic' as to render [it] essentially at home" in this forum. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326

13

U.S. 310, 317 (1945)). *See also Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005).  Essentially, Randall-Reilly is only "at home" in its place of incorporation or principal place of business. *See Daimler*, 571 U.S. at 136–37.

Randall-Reilly is not "at home" in Michigan because it is a Delaware limited liability company with its principal place of business in Tuscaloosa, Alabama. (Ex. A at ¶¶ 13–14.) Randall-Reilly has no members who are Michigan residents, no Michigan bank accounts, and no Michigan physical locations. (*Id.* at ¶¶ 13, 16, 18.) As of August 1, 2016, less than 2.5% of all *Overdrive* subscribers were residents of the state of Michigan.  (*Id.* at ¶ 17.)  Randall-Reilly does not specifically target the state of Michigan for subscriptions to *Overdrive*.  (*Id.* at ¶ 15.)  Randall-Reilly only has ten remote employees who work in Michigan—a small fraction of its approximately 600-person workforce. (*Id.* at ¶ 16.) In other words, Randall-Reilly's interactions with the forum are far from the "continuous and systematic" contacts required to subject an LLC to general personal jurisdiction.

In *Bristol-Myers Squibb*, the Supreme Court determined the California court's exercise of personal jurisdiction over the defendant violated the Due Process Clause of the Fourteenth Amendment despite it having over 400 employees in California and more than $900 million in revenue in California from the sale of the pharmaceutical at issue. 137 S. Ct. at 1777–78, 1780, 1784. The fact that Bristol-Myers Squibb was not incorporated in California and did not have its principal place

of business in California was sufficient for the Supreme Court to find a lack of "general" personal jurisdiction. *Id.* The same result is warranted here. *See also BNSF Railway Co. v. Tyrell*, 137 S. Ct. 1549, 1558–59 (2017) (denying general personal jurisdiction where defendant was not headquartered or incorporated in the forum state even though defendant had "over 2,000 miles of railroad track and more than 2,000 employees" in the forum state).

A limited liability company merely operating a website accessible in Michigan, without more, does not subject itself to Michigan general personal jurisdiction, either. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890 (6th Cir. 2002) ("The level of contact with a state that occurs simply from the fact of a website's availability on the Internet is therefore an 'attenuated' contact that falls short of purposeful availment."); *Impulsaria, LLC v. United Distribution Grp., LLC*, No. 1:11-CV-1220, 2012 WL 4341058, at *3 (W.D. Mich. Sept. 20, 2012) ("The district courts in this Circuit have routinely held that the mere maintenance of an interactive, commercial website, accessible from anywhere, without more, cannot constitute purposeful availment."). Thus, Randall-Reilly's engagement in this activity does not subject it to general personal jurisdiction in Michigan.

## 2. Randall-Reilly is not subject to specific personal jurisdiction.

Specific personal jurisdiction exists when "claims in the case arise from or are related to the defendant's contacts with the forum state." *Henderson*, 428 F.3d at

15

615. The Sixth Circuit considers three criteria when conducting a specific personal jurisdiction analysis. *Southern Mach. Co. v. Mohasco Indus.*, 401 F.2d 374, 381 (6th Cir.1968). "First" Randall-Reilly must have "purposefully avail[ed]" itself "of the privilege of acting in the forum state or causing a consequence in the forum state." *Id.* at 381. "Second," Mr. Sharper's "cause of action must arise from" Randall-Reilly's "activities there." *Id.* "Finally," Randall-Reilly's acts, or consequences it caused, "must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Id.*

The evidence shows that Mr. Sharper cannot establish—as is his burden—that this suit arises from Randall-Reilly's activities in the forum state, let alone that Randall-Reilly caused consequences with a substantial connection in Michigan. As discussed above in Section I.A., *supra*, Mr. Sharper's cause of action does not arise from Randall-Reilly's activities in Michigan because Mr. Sharper never subscribed to *Overdrive*, never purchased an *Overdrive* subscription, and had no relationship with Randall-Reilly during the Complaint's relevant time period.[1] (Ex. A at ¶¶ 4–12.) Without such a link, Randall-Reilly engaged in no suit-related conduct giving rise to specific personal jurisdiction because the alleged contact at the heart of this suit never occurred. (*See id.*; *see also* ECF No. 1, PgIDs.1-4, 20-24, Compl. at ¶¶ 1–

---

[1] Mr. Sharper's 2021 and 2022 contacts are irrelevant to this inquiry for the reasons set forth in Section II.A., *supra*.

16

4, 53–73). Although this case should be dismissed on subject-matter jurisdiction grounds, this Court also lacks personal jurisdiction and can dismiss for that reason as well. *See e.g.*, *Dodson Int'l Parts*, 2019 WL 5680579 at \*2–3 (no specific jurisdiction because plaintiff did not allege that defendant directed engines at issue to be repaired in Michigan); *Magna Powertrain*, 192 F. Supp. 3d at 831 (no specific jurisdiction because the defective sealant was manufactured in New York, and the sealant was used to make transfer cases in Mexico); *Impulsaria*, 2012 WL 4341058 at \*4 (no personal jurisdiction when Plaintiff has shown nothing more than that Defendant offers sales on a website that is accessible by Michigan residents).

### C. Mr. Sharper's lack of standing prevents substitution or addition of a new class representative.

Mr. Sharper and the class he purports to represent cannot create jurisdiction by substituting or adding a new named plaintiff because he never had claims to assert in the first place. For example, in *In re Packaged Ice Antitrust Litigation*, No. 08-MDL-1952, 2011 WL 6178891, at \*6 (E.D. Mich. Dec. 12, 2011), where the court determined that the named plaintiffs lacked standing, the plaintiffs "sought to resurrect those claims by adding parties whom they allege . . . have standing . . . ." The court rejected the plaintiffs' efforts, explaining "[w]hile it may be appropriate under certain circumstances to permit parties to allege additional facts to support the standing as to existing plaintiffs, amending to add new parties who assert claims that the [original plaintiffs without standing] never had, and still do not have, must fail."

17

*Id.*  The court further reasoned "[w]hile it is true … that defective allegations of jurisdiction may be amended to reflect facts that existed at the time a complaint was filed but were improperly or inadequately pleaded, the ability to amend to correct allegations of jurisdiction does not permit a party to retroactively create jurisdiction that did not exist at the time a complaint was filed." *Id.*

Other courts within this circuit and commentators agree.  *See e.g., Zurich Ins. Co.*, 297 F.3d at 531 ("Zurich . . . had no standing to bring this action and [therefore] no standing to make a motion to substitute the real party in interest."); *Lin v. Crain Communications, Inc.*, CV-19-11889, 2020 WL 2043527, at *1 (E.D. Mich. April 27, 2020) ("[s]ubstitution among class representatives is otherwise allowed so long as there are several and at least one has standing throughout the case.") (citing William B. Rubenstein, 1 NEWBERG ON CLASS ACTIONS § 2:8 (5th ed. 2013);  *Key v. DSW, Inc.*, 454 F. Supp. 2d 684, 687 (S.D. Ohio 2006) (If a named plaintiff "does not have standing, she may not seek relief on behalf of herself or any other member of the class. Consequently, the Court must dismiss a case if the named plaintiff does not have standing regardless of whether members of the putative class have suffered injuries.") (internal citation omitted); William B. Rubenstein, 1 NEWBERG ON CLASS ACTIONS § 2:8 (5th ed. 2013) ("[I]f a case has only one class representative and that party does not have standing, then the court lacks jurisdiction over the case and it must be dismissed; if the case only had this one class representative from the outset,

18

then there is no opportunity for a substitute class representative to take the named plaintiff's place because this means that the court never had jurisdiction over the matter."); Joseph M. McLaughlin, 1 MCLAUGHLIN ON CLASS ACTIONS § 4.36 (18th ed. 2021) ("Because there must be a case properly before the court in the first place in order to substitute a new plaintiff, an amendment of the complaint to substitute a new plaintiff will not be allowed if the original plaintiff is determined to have lacked standing to bring the claims.").

Here, Mr. Shaper lacks standing because he has no injury fairly traceable to Randall-Reilly. *See supra* at Section II.A. Therefore, he cannot move to substitute a new party and the Complaint must be dismissed in its entirety. *In re Packaged Ice Antitrust Litigation*, 2011 WL 6178891 at *7 ("[W]here a plaintiff never had standing to assert a claim against the defendants, it does not have standing to amend the complaint and control the litigation by substituting new plaintiffs, a new class, and a new cause of action.") (quoting *Summit Office Part, Inc. v. United States Steel Corp.*, 639 F.2d 1278, 1283 (5th Cir. 1981)).

### D.   Alternatively, this Court Should Compel Individual Arbitration of Mr. Sharper's Claims if His Later Contacts Become at Issue.

Mr. Sharper bases his claims on his purported subscription to *Overdrive*, allegedly leading to the unauthorized disclosure of his "Private Reading Information . . . during the relevant pre-July 31, 2016 time period."  (ECF No. 1, PgID.1, Compl. ¶ 1.)  As set forth in Section I, Randall-Reilly's database searches revealed no sign

19

of Mr. Sharper during that period.  Therefore, he lacks standing.

Yet, an "Alandress Sharper," along with a "Butch Sharper" using the same email address and phone number as that Alandress Sharper, applied for jobs through a Randall-Reilly website on a total of three occasions across 2021 and 2022.  (Ex. A at ¶¶ 7-11; *see also supra* at Section I.) At those times, the Randall-Reilly website in question was subject to respective Website Terms, which apply to users of the website and contain arbitration and class waiver provisions.  (Ex. A, Attachs. A, B, and C.) Therefore, out of an abundance of caution and to avoid waiver, Randall-Reilly moves alternatively to compel arbitration on an individual basis in the event Mr. Sharper's 2021 and 2022 contacts with Randall-Reilly become at issue.

### 1.  Applicable Terms and Conditions

Randall-Reilly's searches revealed three entries potentially relating to "Alandress Sharper": the August Entry, the March Entry, and the June Entry. (Ex. A at ¶¶ 7-11; *see also* Section I, *supra*.) On those dates, the CIG Website was subject to the Website Terms attached to the Declaration of Keith Manthey as Attachment A (for August Entry), Attachment B (for March Entry), and Attachment C (for June Entry), which all contain mandatory arbitration provisions and class waivers.

The August 2022 Website Terms provide, in pertinent part, that "**By using the Website, you accept and agree to be bound and abide by these Terms of Use**," (Ex. A at ¶ 7; Ex. A, Attach. A) (emphasis in original), and that "any dispute,

controversy or claim of any kind and nature arising out, relating to or in connection with the terms of use, the website, or the use of the website . . . shall be subject to final and binding arbitration . . ." *Id.* Importantly, the arbitration provision further states that "you agree to arbitrate solely on an individual basis, and that this agreement does not permit class arbitration or any claims brought as a plaintiff or class member in any class or representative arbitration proceeding." *Id.* The pertinent parts of the March 2022 Website Terms and the June 2021 Website Terms are substantially the same. (Ex. A, Attach. B & Attach. C.)

### 2. Legal Analysis

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–16, governs the arbitration provisions contained within all three Website Terms agreements. The FAA applies to any arbitration agreement that is "written" and in a contract "evidencing a transaction involving commerce." 9 U.S.C. § 2. Both criteria are met here as: (i) the Arbitration Provisions contained within the Website Terms are in writing; and (ii) the Website Terms agreements between Sharper, a Michigan resident, and Randall-Reilly, a company with its principal place of business in Alabama, entered into for purposes of applying for jobs, involve interstate commerce. *See e.g.*, *Shirley v. Rocket Mortgage*, No. 2:21-cv-13007, 2022 WL 2541123, at *1 (E.D. Mich. July 7, 2022) (compelling arbitration under the FAA based on defendant's website terms).

The FAA further mandates arbitration on issues as to which an arbitration

agreement has been signed. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Under 9 U.S.C. § 2, a commercial arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* "The pertinent question, then, is whether there is a valid agreement between the parties and whether the specific dispute falls within the substantive scope of the agreement." *MacRury v. Am. Steamship Co.*, 2017 WL 2953045, at *2 (E.D. Mich. July 11, 2017) (citing *Andrews v. TD Ameritrade, Inc.*, 596 Fed. App'x 366, 370 (6th Cir. 2014)).[2] Here, the answer would be yes.

### a. The parties have a valid arbitration agreement.

Whether there is a valid arbitration agreement that covers the parties' dispute is a matter of state law; but the strong federal policy in favor of enforcing arbitration agreements must be taken into account in applying that state law. *MacRury*, 2017 2017 WL 2953045 at *2 (quoting *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 498 (6th Cir. 2004)); *see also Southland Corp. v. Keating*, 465 U.S. 1, 10–11 (1984) (federal preemption of state arbitration law and policy). "[A]ny doubts regarding arbitrability must be resolved in favor of arbitration . . . because there is a strong presumption in favor of arbitration under the FAA." *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 450

---

[2] The two other factors—whether federal statutory claims are involved and only some claims are subject to arbitration, see *MacRury*, 2017 WL 2953045 at *3—do not apply because the Complaint alleges only one state-law count. (*See* ECF No. 1, PgIDs.21-24, Compl. at ¶¶ 55–73.)

(6th Cir. 2005) (citations omitted). "[B]ecause of the strong presumption in favor of arbitration, waiver of the right to arbitration is not to be lightly inferred." *Id*.

Under Alabama Law,[3] contract formation requires "an offer and an acceptance, consideration, and mutual assent to terms essential to the formation of a contract." *Ex parte Cain*, 838 So. 2d 1020, 1026–27 (Ala. 2002) (discussing contractual requirements in the arbitration context) (internal quotations and citations omitted). "Assent may be manifested by ratification." *Southern Energy Homes, Inc. v. Hennis*, 776 So. 2d 105, 108 (Ala.2000). Similarly, under Michigan law, "[A]n acceptance sufficient to create a contract arises where the individual to whom an offer is extended manifests an intent to be bound by the offer, and all legal consequences flowing from the offer, through voluntarily undertaking some unequivocal act sufficient for that purpose." *Kloian v. Domino's Pizza LLC*, 733 N.W.2d 766, 770 (Mich. App. 2006). By applying for jobs through the CIG Website, Sharper agreed to and ratified the Website Terms, including the arbitration and class waiver provisions. (Ex. A, Attach. A at pg.1, Attach. B at pg. 1, Attach. C. at pg. 1.)

### b. Mr. Sharper's claims fall within the arbitration clause.

The arbitration clauses in the Website Terms are broad, covering "any dispute, controversy or claim of any kind and nature arising out of, relating to or in

---

[3] The Website Terms state that "they shall be governed by and construed in accordance with the internal laws of the State of Alabama . . .)." (*See e.g*., Ex. A, Attach. A at pg. 14.)

connection with the terms of use, the website, or use of the website, including disputes arising from or concerning their interpretation, violation, invalidity, non-performance, or termination." (*See e.g.*, Ex. A, Attach. A at pg.15.) Mr. Sharper's use of the CIG Website would result in a "dispute" between Mr. Sharper and Randall-Reilly "arising out of, relating to or in connection with . . . the website, or use of the website." The agreement contains a valid limitation on class actions. *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612 (2018); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) ("Requiring the availability of classwide arbitration interferes with the fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA."). Further, Mr. Sharper cannot meet his burden to show that the arbitration agreement is unenforceable. *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91–92 (2000).

Courts routinely compel arbitration based on website terms. *See, e.g.*, *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873 (6th Cir. 2021) (affirming motion to compel arbitration based on website terms and conditions); *Shirley*, 2022 WL 2541123, at *1; *McLellan v. Fitbit, Inc.*, No. 3:16-CV-00036-JD, 2018 WL 1913832, at *2 (N.D. Cal. Jan. 24, 2018) ("[c]ourts routinely find [clickwrap agreements] valid and enforceable because the user must affirmatively acknowledge receipt of the terms of the contract.")

As noted above, Randall-Reilly makes this alternative motion to compel

arbitration out of an abundance of caution, and in the event Mr. Sharper's known contacts with Randall-Reilly are placed at issue, Randall-Reilly preserves its right to compel individual arbitration or to enforce any of the terms of the Website Terms. If those contacts are placed at issue, Randall-Reilly respectfully requests leave to provide supplemental briefing on arbitration. Similarly, Randall-Reilly reserves—and does not waive—all rights under the applicable Website Terms in the event Mr. Sharper provides evidence of a relationship with Randall-Reilly in the relevant time period on or before July 31, 2016.

## III. Conclusion

For the foregoing reasons, Randall-Reilly requests that this Court grant its motion, deny any efforts to amend or substitute, and dismiss Mr. Sharper's claims with prejudice. Alternatively, if Mr. Sharper's known contacts with Randall-Reilly are placed at issue, Randall-Reilly requests this case be sent to individual arbitration.

Respectfully submitted,

Dated: September 19, 2022

/s/ Jonathan E. Lauderbach
Jonathan E. Lauderbach (P51313)
Katelyn D. Crysler (P83718)
WARNER NORCROSS + JUDD LLP
2715 Woodward Ave., Suite 300
Detroit, Michigan 48201
(313) 546-6000
jlauderbach@wnj.com
kcrysler@wnj.com
*Attorneys for Defendant Randall-Reilly, LLC*

25

## <u>CERTIFICATE OF SERVICE</u>

The undersigned states that on September 19, 2022, the foregoing document was served via the court's electronic filing system, which will send notification of such filing to all attorneys on record.

<u>/s/ Jonathan E. Lauderbach</u>
Jonathan E. Lauderbach